# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| THERESA D. GRAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 3:07-CV-591 |
| | ) | |
| JOB WORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION AND ORDER</u>

This matter is before the Court on the: (1) Defendant's Motion for Summary Judgment, filed by Defendant, JobWorks, Inc., on March 18, 2009 [DE #30]; and (2) Defendant's Motion to Strike, filed by Defendant, JobWorks, Inc., on May 11, 2009 [DE #36]. For the reasons set forth below, the motion to strike [DE #36] is **DENIED**. The motion for summary judgment [DE #30] is **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's complaint. Furthermore, the Clerk is **ORDERED** to **CLOSE** this case.

<u>BACKGROUND</u>

Pro se Plaintiff, Teresa Graves, was employed by Defendant, JobWorks South Bend (hereinafter "JobWorks") as an Employment and Training Advisor ("ETA"). She was terminated after returning from sick leave due to an alleged reduction in force. At the time of her termination, Graves was 52 years old, and she is also African-

American.

In her employment discrimination complaint filed on December 3, 2007, Graves states claims for wrongful termination under Title VII of the Civil Rights Act of 1962, as amended (42 U.S.C. § 2000e-5), age discrimination under the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 621), and discrimination based upon a perceived disability in violation of the Americans With Disabilities Act ("ADA") (41 U.S.C. § 12101).

JobWorks filed the instant motion for summary judgment on March 18, 2009, requesting that the Court enter summary judgment against Plaintiff on all claims raised in the complaint because there are no genuine issues of material fact, and JobWorks is entitled to summary judgment as a matter of law. In conjunction with its motion for summary judgment, JobWorks also provided Plaintiff, who is pro se, with notice pursuant to *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1987), explaining the consequences of failing to respond properly to the summary judgment motion. (DE #32.) Graves filed her response to the motion for summary judgment on April 15, 2009 (DE #33). The response is a 10-page document that is narrative in form, and purports to set forth "facts," but includes no citations to evidentiary material, law, affidavits, depositions, or discovery. JobWorks filed its Motion to Strike Graves' response, arguing that many of the statements in Graves' response are not based upon personal knowledge and are nothing more

than personal opinion and subjective belief, and that many of the statements contained in the response contain inadmissible hearsay. Graves has not filed a response to the motion to strike. Having been fully briefed, the motions are ripe for adjudication.

DISCUSSION

Motion to Strike

Graves' response to the motion for summary judgment filed by JobWorks consists of approximately 6 pages of "introduction," which largely consists of argument, approximately 4 pages of a "statement of facts," and a number of attachments including e-mails and resumes. The facts listed by Graves in the "statement of facts" do not contain citations to affidavits or citations to anything in the record.

It is noteworthy that Graves is a pro se plaintiff. However, her pro se status does not relieve her from complying with the procedural rules associated with summary judgment. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) (requiring pro se plaintiff to strictly comply with Northern District of Illinois Local Rule 56.1); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (explaining that pro se litigants must still comply with procedural rules). Pursuant to Local Rule 56.1(e), Graves was given notice from JobWorks that provided, in pertinent part, as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated herein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

(Notice to Pro Se Pl. Pursuant to Lewis v. Faulkner Regarding Resp. To Mot. For Summ. J., pp. 1-2 (DE #32).)

Local Rule 56.1 provides that, in opposing a motion for summary judgment, the non-moving party shall file a "Statement of Genuine Issues" "setting forth, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence, all material facts as to which it is contended there exists a genuine issue necessary to be litigated." L.R. 56.1(a). The Rule permits the statement of genuine issues to be filed in the text of the response or as an appendix to the response. "The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument." *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000).

A party who wishes to argue that portions of a statement of genuine issues contain errors or are inadmissible on evidentiary

grounds may file a motion to strike those portions of the statement of genuine issues. *Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 640 (N.D. Ind. 1997). "Pleadings that do not conform with the local rules may be stricken at the discretion of the court." *Id.* at 640 (citing *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir. 1990); *Pfeil v. Rogers*, 757 F.2d 850, 858 (7th Cir. 1985); *Graham v. Security Sav. & Loan*, 125 F.R.D. 687, 688-89 (N.D. Ind. 1989), *aff'd*, 914 F.2d 909 (7th Cir. 1990)). More importantly, it is the function of a court, with or without a motion to strike, to review carefully both statements of material facts and statements of genuine issues and the headings contained therein and to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement. *See, e.g.*, *S.E.C. v. KPMG LLP*, 412 F.Supp.2d 349, 392 (S.D.N.Y. 2006); *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, No. 04 C 5167, 05 C 2253, 2006 WL 980740, at *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, No. 03 C 2249, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F.Supp.2d 917, 920 n.1 (N.D. Ind. 2004).

In this case, JobWorks argues that Graves' entire response, as well as the attached exhibits, should be stricken because she has "present[ed] an argumentative narrative of 'facts,' replete with personal opinions, speculation, and hearsay." (Mem. Of Law in Supp. Of Def.'s Mot. To Strike, p. 2.) Specifically, JobWorks contends that the response should not be admissible as an affidavit

5

because it was not sworn to under penalty of perjury, many of the statements are not based upon personal knowledge, and some of the statements contain inadmissible hearsay (including but not limited to a public television segment wherein a former JobWorks' employee allegedly stated that JobWorks did not provide services to a laid off employee).  (*Id.*, pp. 2-5.)

The remedy requested by JobWorks, which asks the Court to strike Plaintiff's response to the motion for summary judgment in its entirety, is overly broad.   Some of the response in the section entitled "introduction" is proper argument.  To the extent material in the response, and specifically material in the Statement of Facts, is insufficient because it is unsupported by evidence in the record, the Court is capable of redacting from the Statement of Facts and disregarding all unfounded assertions of fact as well as unfounded interpretation or analysis of the facts.

Additionally, with respect to the alleged hearsay objections, the Court notes that in ruling on a motion for summary judgment, the Court considers only evidence that would be admissible at trial.  *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000).  To the extent the statements in Plaintiff's response would be inadmissible if she offered them at trial, the Court will not consider them or the portions of the response they purport to support.   The Court is able to sift through the evidence and to consider each piece under the applicable federal rules, thus there is no need to strike all, or any part of, Plaintiff's Response. The Court takes into consideration the challenges JobWorks raised

as to the admissibility of certain paragraphs of Plaintiff's Response. Accordingly, the Court denies JobWorks' motion to strike Plaintiff's Response in its entirety as overly broad and unnecessary.

Summary Judgment

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of

material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." *Celotex*, 477 U.S. at 323.

The Court recognizes that "summary judgment is frequently inappropriate in discrimination cases because intent, and therefore credibility, is often a crucial issue." *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir. 1989). While the Court approaches the question of summary judgment with "special caution" in discrimination cases, "if a plaintiff in a discrimination case is unable to present any evidence to create a genuine issue as to whether the defendant's articulated reason for the firing is the real reason, then summary judgment will be appropriate." *Id.* at 188-89; *see also Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988).


Undisputed Facts

Graves is an African-American female who was employed by JobWorks from September 7, 2004, through August 10, 2006, as an ETA. She was hired by Tom Kavanagh, Vice President and General Manager of JobWorks, Inc. (*See* Affidavit of Tom Kavanagh, hereinafter "Kavanagh Aff.," ¶¶ 3-4.) Eleven other people were employed as ETAs at JobWorks in Region 2. In January 2005, JobWorks implemented a new case management computer software system, but Graves had difficulty learning the new system and was not as proficient as her fellow ETAs. (*See* Kavanagh Aff., ¶ 5; Affidavit of Gregg Pantale, hereinafter "Pantale Aff.," ¶¶ 4-5.)

During the Spring and early Summer of 2006, JobWorks learned it was going to lose federal funding for its youth services program. (Affidavit of Steve Corona, hereinafter "Corona Aff.," ¶ 4.) Specifically, the cuts resulted in an overall reduction of funding for Region 2 of $353,000. (*Id.*) Corona, the President and Chief Executive Officer of JobWorks, personally attended meetings at the JobWorks' South Bend location during the Spring and Summer of 2006 and discussed with the staff the fact that reductions in JobWorks' funding might require changes in staffing and personnel. (Corona Aff., ¶ 5.) Additionally, Kavanagh and Pantale, Graves' supervisor, discussed funding cuts and the possibility of staff reductions during staff and regional meetings in the Summer of 2006. (Kavanagh Aff., ¶ 6; Pantale Aff., ¶ 6.) Due to the upcoming funding reduction, Pantale and Kavanagh decided they may need to reduce the number of Youth Services ETAs in the South Bend office by one. (Kavanagh Aff., ¶ 7; Pantale Aff., ¶ 7.) At the time, the three Youth ETAs in the South Bend office were Graves, Alonzo Poindexter (an African-American male over 40), and Julie Loch, a Caucasian female under 40. (*Id.*) Kavanagh and Pantale evaluated the strengths and skills of the three employees to determine which of them were best able to continue to manage their workload and were also proficient with the case management system. (*Id.*) After assessing a variety of factors, Kavanagh and Pantale decided Graves was the weakest team member and should therefore be

the subject of the reduction-in-force. (*Id.*)

Meanwhile, in June of 2006, the JobWorks' breakroom was being remodeled. Graves is allergic to dust and developed a respiratory infection due to dust in the breakroom. (Graves Dep., p. 46.) Dr. Thomas Barbour, Graves' internist, diagnosed Graves with "probable allergic rhinitis," and recommended that she "stay off of work for two weeks." (Graves Dep. Ex. B; Graves Dep., p. 50.) Graves talked with Kavanagh about needing time off per the doctor's orders, and on July 25, 2006, sent an e-mail to Pantale and Kavanagh stating she would be absent from work until August 8, 2006. (Graves Dep. Ex. C.) Aside from her allergies, Graves had no other medical issues that required her to be off work until August 8, 2006. (Graves Dep., pp. 53, 55.) However, the Court notes that Graves is also diabetic. (Graves Dep., pp. 56-57.) Kavanagh attests that his "decision that Graves would be the subject of the reduction-in-force was made before she was off work pursuant to her doctor's orders." (Kavanagh Aff., ¶ 10.)

Graves returned to work as planned on August 8, 2006. (Graves Dep., p. 72.) On the morning of August 10, 2006, Kavanagh met with Graves and "informed her that due to the funding cuts of which [Kavanagh] previously informed the staff, her position was being eliminated as part of a reduction-in-force necessitated by the funding cuts." (Kavanagh Aff., ¶ 11; *see also* Graves Dep., pp. 77-78.) Graves asked whether the termination was the result of her

work performance, and Kavanagh responded that her work performance was not the issue, rather he needed to make a reduction-in-force because of the funding cuts.  (Kavanagh Aff., ¶ 11.)

Graves filed a Charge of Discrimination with the South Bend Human Rights Commission on August 17, 2006.  (Mot. for Summ. J. Ex. A, Charge of Discrimination.)  In her charge, she alleges she was discriminated against on the basis of race, age, and disability, and that "after I opposed several discriminatory practices concerning terms and conditions of employment, wages, and unsafe conditions in the workplace, I believe [Pantale] retaliated against me by recommending my layoff." (*Id.*)

In September 2006, a different ETA position became open at JobWorks, posted with the Indiana Department of Workforce Development.  (Kavanagh Aff., ¶ 13; Pantale Aff., ¶ 11.)  Graves applied for the position, and she was one of 15 people selected for an interview.  (Graves Dep., p. 104; Kavanagh Aff., ¶¶ 14-15; Pantale Aff., ¶ 12.)  Another person who interviewed for the ETA position was Douglas Warnell, an African-American male over the age of 40.  (Kavanagh Aff., ¶ 16.)  In the end, Kavanagh and Pantale decided to hire Warnell for the open position.  (Kavanagh Aff., ¶ 16; Pantale Aff., ¶ 13.)  Kavanagh and Pantale believed Warnell was the best applicant due to his prior experience, and his personality, because he would be dealing with ex-offenders re-entering the workforce.  (*Id.*) Graves alleges that she was not

hired for the ETA position because of her race, age, perceived disability, and in retaliation of her filing a Charge of Discrimination. Both Kavanagh and Pantale state in their affidavits that these issues had nothing to do with their decision to hire Warnell instead of Graves. (Kavanagh Aff., ¶ 17, Pantale Aff., ¶ 14.) JobWorks does not have a seniority policy, thus the fact that Graves previously worked for JobWorks did not give her special consideration for the open ETA position. (Kavanagh Aff., ¶¶ 9, 17.)

Graves filed a second Charge of Discrimination on February 1, 2007. She alleged that she was not "hired or reinstated to positions because I filed a previous charge of discrimination . . . and my race, black, . . . my age, 52 . . . and, my perceived disability." (Mot. For Summ. J. Ex. B, Second Charge of Discrimination.)

The EEOC issued a Notice of Suit Rights letter on September 7, 2007, with regard to the second Charge of Discrimination. (Mot. For Summ. J. Ex. C.) The EEOC was "unable to conclude that the information obtained establishes violations of the statutes." (*Id.*) The EEOC issued a second Notice of Suit Rights letter on November 14, 2007, with regard to the first Charge of Discrimination. (Mot. For Summ. J. Ex. D.) Again, the EEOC found it was "unable to conclude that the information obtained establishes violations of the statutes." (*Id.*)

<u>Discrimination Based on Race And Age</u>

Graves alleges race discrimination in violation of Title VII and age discrimination in violation of the ADEA.  Title VII provides that it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1). Likewise, the ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of the employee's age.  29 U.S.C. § 623(a)(1).  An employee must be at least 40 years of age to pursue an age discrimination claim.  29 U.S.C. § 631(a).  "In a Title VII or age discrimination case, a plaintiff may show discrimination under either the 'direct' or 'indirect' *methods* of proof."  *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (citation omitted) (emphasis original).

Before turning to the method of proof in this case, the Court first looks to whether JobWorks is entitled to a "common actor" inference of nondiscrimination.  An inference of nondiscrimination in an age discrimination case arises when the plaintiff is already over age 40 when hired, and the same person conducted the hiring and firing.  *See Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000); *Chiaramonte v. Fashion Bed Group, Inc.*, 129

F.3d 391, 399 (7th Cir. 1997) (quotation omitted) (noting "[i]t is highly doubtful that a person who hires an employee in a protected age group . . . would fire the same employee . . . as a result of a sudden aversion to older people."); *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1147 (7th Cir. 1994) (quotation omitted) ("[i]t seems rather suspect to claim that the company that hired [plaintiff] at age 47 had suddenly developed an aversion to older people two years later."). Similarly, the Seventh Circuit has approved the use of the "common actor" presumption to find nondiscrimination based upon race. *See E.E.O.C. v. Our Lady of Resurrection Med. Ctr.*, 77 F.3d 145, 152 (7th Cir. 1996).

In this case, it is undisputed that Kavanagh hired Graves, an African-American, in 2004, when she was well over the age of 40. Furthermore, it is undisputed that Kavanagh later made the decision, and actually terminated Graves. A presumption of nondiscrimination on the basis of age and race arises from these undisputed facts because it is unlikely that Kavanagh would suddenly "develop[] an aversion" to African-Americans or employees over the age of 40. *See Rand*, 42 F.3d at 1147. Therefore, it is Graves' burden to overcome this common actor presumption.

Graves' response does not indicate whether she wishes to proceed under the direct method or the indirect method in attempting to prove discrimination. However, the direct method "essentially requires an admission by the decision-maker that his

actions were based upon [protected class] animus." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003) (quotation omitted). Here, Graves has put forth no evidence whatsoever that any decision-maker stated that she was being terminated because of her age or race. Thus, Graves must proceed under the indirect method of proof.

The test for proving discrimination using the indirect method was first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). A plaintiff may create a presumption of discrimination by establishing a prima facie case of discrimination. *Atanus*, 520 F.3d at 672. A prima facie case under Title VII or the ADEA can be shown by demonstrating that: (1) the plaintiff is a member of a protected class, (2) her job performance met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff. *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 750-751 (7th Cir. 2006).

In this case, Graves was the only employee affected by what JobWorks characterizes as a mini-reduction in force ("RIF"). (Mem. Of Law in Supp. Of Mot. For Summ. J., p. 10.) Therefore, the fourth factor is altered. "In a mini-RIF context, a situation in which the dismissed worker's duties have been absorbed by another employee rather than eliminated, we employ [a] modified version of

the *McDonnell Douglas* framework." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690 (7th Cir. 2006). The fourth factor requires Graves to show that her job duties were absorbed by employees who were not members of her protected class. *Id.; see also Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007) (holding the fourth factor of the prima facie case in a mini-RIF situation is for the plaintiff to show his job duties were absorbed by employees who were not members of his protected class).

If a plaintiff establishes a prima facie case, a rebuttable presumption of discrimination is created, and the burden of production shifts to the defendant to present evidence of a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802; *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 919 (7th Cir. 2001). If the defendant can produce such a legitimate, non-discriminatory reason, the burden then shifts back to the plaintiff to present evidence that the defendant's proffered reason was pretextual. *Atanus*, 520 F.3d at 672.

Here, it is undisputed that Graves is a member of several protected classes as she is an African-American female over the age of 40, and it is undisputed that she was terminated. However, JobWorks argues that Graves cannot satisfy the prima facie test because she fails the fourth element. Specifically, JobWorks contends that Graves cannot show that her job duties were absorbed by employees who were not members of her protected class. The

Court concurs. Graves' work in the South Bend office was subsumed by the other two ETAs - Alonzo Poindexter (an African-American male over 40), and Julie Loch, a Caucasian female under 40. Because at least a portion of Graves' work was absorbed by an employee who was a member of her protected class (Poindexter was both African-American and over 40), Graves has failed to prove the fourth element of her prima facie case.

As such, Graves has failed her initial burden of establishing a prima facie case of race and age discrimination and the Court may grant summary judgment on this basis alone. *See Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1011 (7th Cir. 2000) (finding where a plaintiff has "failed to make a prima facie case, [the Court] need not address" the issue of pretext). However, even if Plaintiff had succeeded in establishing a prima facie case of discrimination, the Court could also grant summary judgment on the ground that JobWorks has articulated a legitimate, non-discriminatory reason for terminating Graves - JobWorks' funding was being cut in the Spring and early Summer of 2006, and it needed to reduce the staff. Other courts have held that a reduction in force is a legitimate, non-discriminatory reason for eliminating an employee's position. *See, e.g., Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553, 556 (7th Cir. 2001); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999) (finding an RIF was a legitimate, non-discriminatory reason for laying off an employee).

The burden then shifts to Graves to demonstrate that the "nondiscriminatory" reason is not the real reason for termination, but instead a cover-up for discrimination. *Koski v. Standex Int'l Corp.,* 307 F.3d 672, 677 (7th Cir. 2002); *see also Pignato v. American Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994) (holding that to establish pretext, the plaintiff bears the burden of establishing that the given reason was a "phony reason"); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1123-24 (7th Cir. 1994) (plaintiff must provide evidence from which it could be inferred that "the [employer] lied about its proffered reasons" for the adverse action). "The fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual." *Essex v. United States Parcel Serv., Inc.*, 111 F.3d 1304, 1309 (7th Cir. 1997) (citations omitted).

Because Graves' position was eliminated as part of a RIF, she may demonstrate pretext in one of two ways: (1) by showing that the entire RIF was a pretext for discrimination, or (2) by showing that the reasons for including Graves in the RIF were pretextual. *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012-13 (7th Cir. 2000). Graves has not demonstrated that the RIF was a pretext for discrimination. Moreover, it is undisputed that JobWorks suffered from funding cuts. Graves herself admits that there was always a possibility of JobWorks losing the federal grant that it had.

(Graves Dep., p. 43.)  Graves has not properly disputed the sworn affidavits of Kavanagh and Pantale which establish that in the early Summer of 2006, JobWorks learned it was going to lose between $250,000 and $300,000 in federal funding for its youth services program – a substantial sum.  (Kavanagh Aff., ¶ 6; Pantale Aff., ¶ 6.) Although Graves argues that only firing her (she contends that a major reduction in funding should logically result in a major reduction in force) in the "mini-RIF" is suspect because the "sole lay off of [Graves] was a pretext to disguise retaliation, racism, and agism," she cites to absolutely nothing in the record to support these subjective beliefs.  (Resp., pp. 3, 5.)  Graves has pointed to nothing suggesting that Kavanagh and Pantale did not genuinely believe that because of the reduction in funding, they believed they needed to terminate one ETA.  *See Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (holding the proper inquiry is not whether the reasons for termination were right, but whether the description of the reasons is honest).  As the Seventh Circuit has repeatedly stated, "[w]e do not sit as a super-personnel department that reexamines an entity's business decisions . . . our inquiry is limited to whether the employer gave an honest explanation of its behavior."  *Kralman v. Illinois Dept. Of Veteran's Affairs*, 23 F.3d 150, 156 (7th Cir. 1994) (quotations omitted); *see also Dyrek v. Garvey*, 334 F.3d 590, 598 (7th Cir. 2003); *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir.

20

2000).

Additionally, Graves has not shown that it was pretext to only terminate her in the RIF.  Both Kavanagh and Pantale attest that after analyzing the strengths and skills of all three ETAs, they made a business decision and determined that Graves was the weakest member of the team. (Kavanagh Aff., ¶ 7; Pantale Aff., ¶ 7.) Graves attempts to argue that she had the largest caseload and was therefore more capable than Poindexter and Loch, but she points to nothing in the record to support this bald assertion.  (Resp., p. 5.)  Graves' unsupported perception about her own abilities is irrelevant. *See, e.g., Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992) ("An employee's self-serving statements about his ability, however, are insufficient to contradict an employer's negative assessment of that ability"). Additionally, Graves speculates that Pantale had a "familiar" or "intimate" relationship with Julie Loch (Resp., p. 9), but again, this is unsupported by affidavits or anything else in the record, and Pantale attests that Loch did not receive preferential treatment during the reduction in force.  (Pantale Aff., ¶ 8.) Specifically, he states that "[t]here is no family relationship between myself and Loch.  Loch was a high school classmate of my sister.  I never met Loch until we started working together at JobWorks." (*Id.*)

In sum, Graves has pointed to nothing suggesting that Pantale

and Kavanagh did not genuinely believe they needed to terminate one ETA because of the funding cut, and that they dismissed her because they believed she was the weakest member of the ETAs. There is no evidence from which a reasonable trier of fact could conclude that JobWorks' proffered reasons for terminating Graves was pretextual. The fact that Poindexter, an African-American over 40 was retained as an ETA, undercuts Graves' argument that she was fired based upon her race and age. Therefore, Graves' discrimination claims based upon race and age cannot survive summary judgment.


Discrimination Based Upon Perceived Disability

Graves has set forth a claim based upon an alleged violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. section 1201, alleging she was terminated for a "perceived disability." (Compl., p. 3.) In response, JobWorks argues it did not perceive her as being disabled.

The ADA provides "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions,

and privileges of employment." 42 U.S.C. § 12112(a).[1]   A

"disability" can be "(A) a physical or mental impairment that

substantially limits one or more of the major life activities of

such individual; (B) a record of such impairment; or (C) being

regarded as having such an impairment." 42 U.S.C. § 12102(2).

To establish a claim of discrimination under the ADA, Graves

must demonstrate that: (1) she was disabled under the ADA; (2) her

work performance met JobWorks' legitimate expectations; (3) she was

terminated; and (4) the circumstances surrounding her termination

indicate that it is more likely than not that her disability was

the reason for the termination. *See Patterson v. Chicago Ass'n For*

*Retarded Citizens*, 150 F.3d 719, 725 (7th Cir. 1998) (citing *Leffel*

*v. Valley Fin. Servs.*, 113 F.3d 787, 794 (7th Cir. 1997)). As with

her claims for age and race discrimination, once Graves establishes

a prima facie case, then the burden shifts to JobWorks to provide

a legitimate, nondiscriminatory reason for Graves' termination.

However, if Graves fails to establish her prima facie case, the

burden does not shift. *See Coco v. Elmwood Care, Inc.*, 128 F.3d

1177, 1179 (7th Cir. 1997).

As mentioned earlier, Graves claims that JobWorks regarded her

---

[1]ADA Amendments went into effect on January 1, 2009. Pub. L. No. 110-325, 112 Stat. 3553 (codified as amended at 29 U.S.C. § 12101 *et seq.*). However, the Seventh Circuit has held that the ADA Amendments are not retroactive. *See Winsley v. Cook County*, 563 F.3d 598, 600 n.1 (7th Cir. 2009); *Kiesewetter v. Caterpillar Inc.*, 295 Fed. Appx. 850, 851 (7th Cir. 2008). Therefore, the Court has analyzed Graves' claims under the ADA of 1990.

as disabled.  She can prove this claim by showing either: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489 (1999).  To establish this "regarded as disabled" claim, it is insufficient for Graves to prove that JobWorks merely knew of an impairment.  *Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001).  Rather, she must establish that JobWorks believed that one or more of her major life activities were substantially limited by her impairment.  *Id.; see also Mack v. Great Dane Trailers*, 308 F.3d 776, 782 (7th Cir. 2002) ("So if the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute.").

With respect to establishing the first element of her prima facie claim under the ADA (that she was disabled), Graves' complaint states that she was discriminated against because of "perceived disability." (Compl., p. 3.)  Graves never identifies the exact disability for which she is being discriminated against. However, in her response to the motion for summary judgment, she alleges that Kavanagh knew about her diabetic medical condition,

and inquired about her rapid weight loss. (Resp., p. 9.) She also alludes that her rapid loss of weight is usually an indication of poor health and disease (*Id.*, p. 2), and in her deposition Graves stated that she thought JobWorks perceived her as being disabled because she might have AIDS. (Graves Dep., p. 96.) The Court will address each possible perceived disability in turn.

First, Pantale and Kavanagh did know that Graves was allergic to dust, because she developed a respiratory infection during the remodeling project. However, her physician only recommended that she be off work until the project was completed. Thus, the aggravation of her allergies seems to be a temporary condition, and a temporary condition does not qualify as a "disability." *See Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999) ("[I]n most instances the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability."); *Vande Zanda v. State of Wisconsin Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995) ("Intermittent, episodic impairments are not disabilities, the standard example being a broken leg."). So Graves' allergies are not protected under the ADA.

Second, JobWorks acknowledges that Graves is a diabetic, and Kavanagh admits that he was aware of her diabetes. (Kavanagh Aff., ¶ 12.) However, Kavanagh stated that he never perceived Graves as disabled, and her status as a diabetic had no bearing on his

decision to terminate her. (*Id.*) The Court notes that case law is clear that not all diabetics are disabled per se under the ADA. In *Sutton*, the Supreme Court addressed this issue and found that it would be contrary to the language of the ADA to find "all diabetics to be disabled," regardless of whether an individual diabetic's condition actually impaired his or her daily activities. *Sutton*, 527 U.S. at 483-84. Graves has put forth no evidence that her diabetes substantially limits one or more major life activities. She admits that after her diabetes was diagnosed in November 2005 (significantly before she was terminated), she did not miss any time off work. (Graves Dep., p. 60.) Therefore, Graves has failed to establish that JobWorks regarded her as being disabled because of her diabetes.

Third, Graves speculates during her deposition that because of her significant weight loss, JobWorks may have perceived her as having AIDS. (Graves Dep., pp. 94, 96-97.) As the Seventh Circuit held in *Gorbitz v. Corvilla*, 196 F.3d 879, 882 (7th Cir. 1999), "[plaintiff's] speculation about what [the employer] *might* have believed does not create a genuine issue of fact." A "plaintiff's speculation is not a sufficient defense to a summary judgment motion." *Id.* (citing *Patterson*, 150 F.3d at 724). Thus Graves has failed to demonstrated that there was a factual dispute about whether she is disabled within the meaning of the ADA.

In sum, Graves has failed to establish her prima facie case

that JobWorks terminated her because it perceived she was disabled. As such, it is entitled to summary judgment on this issue.

Retaliatory Failure to Rehire

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to fail to hire, discharge, or otherwise discriminate against any individual because of the individual's race, color, religion, sex, or national origin. Employers are also forbidden from taking adverse employment actions against an employee for opposing impermissible discrimination. 42 U.S.C. § 2000e-3(a). Graves claims that JobWorks failed to rehire her because she filed a Charge of Discrimination. For a plaintiff to avoid a summary judgment in favor of the employee on an unlawful retaliation claim, they must make out a prima facie case either directly or indirectly. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

Under the direct method of proof, the plaintiff must show: 1) the plaintiff engaged in a statutorily protected expression; 2) the plaintiff suffered an adverse employment action; and 3) a causal link between the plaintiff's expression and the adverse employment action. *Stone*, 281 F.3d at 644. The plaintiff must produce direct evidence that establishes that the plaintiff engaged in a statutorily protected activity that resulted in the complained of

adverse employment action. *Id*. When using the direct method of proof, the plaintiff may present either direct or circumstantial evidence to prove their claim. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). Direct evidence is evidence that would allow the trier of fact to believe the fact in question without making inferences or presumptions. *Id*. Direct evidence is usually limited to situations where the decision-maker admits that his actions were based upon the prohibited animus. *Id*. For example, this type of evidence is exemplified by a statement such as "I fired you because of your age or disability." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

On the other hand, circumstantial evidence is evidence that allows the trier of fact to infer that intentional discrimination occurred by the decision-maker. *Rogers*, 320 F.3d at 753. Circumstantial evidence consists of "ambiguous statements, suspicious timing, discrimination against other employees, and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994). The circumstantial evidence must lead the trier of fact directly to the discriminatory reason for the employment action. *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

It is clear that Graves has not demonstrated that she can make

out her claim for retaliatory failure to reinstate under the direct method of proof.  Although she engaged in a statutorily protected activity by filing her first charge of discrimination, and allegedly suffered an adverse action because she was not hired for the subsequent ETA position that she interviewed for, Graves has set forth no causal connection between the statutorily protected activity and the alleged adverse action against her.  She has not pointed to any direct or circumstantial evidence in the record to support her speculative beliefs.  It is undisputed that Graves was selected to interview for the ETA position along with 14 other individuals.  Warnell, an African-American over the age of 40, was hired for the open position.  (Kavanagh Aff., ¶ 16, Pantale Aff., ¶ 13.)  Kavanagh and Pantale believed Warnell was the best applicant due to his prior experience, and his personality, because he would be dealing with ex-offenders re-entering the workforce. (*Id.*)  There is simply no evidence that the decision to not reinstate Graves was based upon the fact she filed a Charge of Discrimination.  Rather, the evidence in the record suggests it was a business decision.  *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008) (affirming summary judgment where plaintiff pointed to nothing that reasonably suggested the employer's actions were motivated by anything other than business judgment).

Under the indirect method of proof, Plaintiff must establish a prima facie case by demonstrating that:  1) she engaged in a

statutorily protected activity; 2) she applied for and had the qualifications required for the ETA position; 3) she was not hired for the position; and 4) a similarly situated individual who did not file a Charge of Discrimination was hired for the position. *Cichon v. Exelon Generation Co., Inc.,* 401 F.3d 803, 812 (7th Cir. 2005). A failure to establish any of these elements is fatal to the retaliation claim under the indirect method. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002).

However, even if a plaintiff is able to make out a prima facie case under the indirect method, only a rebuttable presumption of discrimination is created and the burden of production then shifts to the defendant to present evidence of a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802-03; *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). If the employer can come up with such a reason, the burden then shifts back to the plaintiff to demonstrate that the employer's reason was actually pretext for the employer's true motivation for the employment decision. *McDonnell Douglas*, 411 U.S. at 804.

It is not disputed that Plaintiff engaged in a statutorily protected activity when she filed a Charge of Discrimination with the Human Rights Commission. However, the fourth element of the prima facie case presents a problem for Plaintiff, because the unrebutted, sworn testimony of both Pantale and Kavanagh establish

that JobWorks believed that Warnell had superior qualifications for the ETA position. (Kavanagh Aff., ¶ 16, Pantale Aff., ¶ 13.) Although Graves speculates that she is better qualified than Warnell, her unsupported perception is irrelevant. *See, e.g., Schultz v. General Electric Capital Corp.*, 37 F.3d 329, 334 (7th Cir. 1984) ("An employee's own self-serving remarks standing alone are insufficient to raise doubt as to the credence of the employer's explanation for termination"). The Court may grant summary judgment on this basis alone, because Graves has failed to satisfy the fourth element of her prima facie case.

Even if Plaintiff had succeeded in establishing a prima facie case of discrimination, the Court could also grant summary judgment on the ground that JobWorks offered a legitimate, non-discriminatory reason for not rehiring Graves for another position - that Warnell was better qualified. As the Seventh Circuit has held:

> [W]here an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.

*Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180-81 (7th Cir. 2002) (quotation omitted); *see also Byrnie v. Town of Cromwell Bd. Of*

*Education*, 243 F.3d 93, 103 (2d Cir. 2001). Further, "a plaintiff's own opinions about her work performance or qualifications does not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions." *Millbrook*, 280 F.3d at 1181 (quoting *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435 (7th Cir. 1996)). In this case, there is no evidence that Graves' qualifications were so favorable and superior to Warnell, that there could be no dispute that she was clearly better qualified for the open ETA position. Rather, JobWorks established that it decided to hire Warnell based upon his qualifications, background, experience, and skills. (Kavanagh Aff., ¶ 16; Pantale Aff., ¶ 13.) Pantale and Kavanagh believed Warnell was the superior candidate by virtue of his prior experience and his personality. (*Id.*) When determining if the employer's decision was actually pretext, the court may only consider the honesty of the employer's explanation. *Dyrek*, 334 F.3d at 598. Graves has put forth no evidence showing that JobWorks did not honestly believe that Warnell was the best candidate for the job. *See Kariotis*, 131 F.3d at 676 (finding as long as an employee honestly believed in the proffered reason, the employee cannot prove pretext even if the employer's reasons are "foolish or trivial or baseless.").

There is no evidence from which a reasonable trier of fact could conclude JobWorks' proffered reason for the failure to rehire

Graves was pretextual for a retaliatory purpose. Therefore, Graves' failure to rehire claim under Title VII cannot survive summary judgment.


## Failure to Rehire Based Upon Age, Race, or Perceived Disability

Graves' claim that she was not rehired for the open ETA position because of her race, age, or perceived disability, can be taken care of in short shrift. As set analyzed previously, JobWorks set forth a legitimate, non-discriminatory reason for hiring Warnell instead of Graves (he was better qualified), and Graves has not pointed to any evidence in the record to show that reason was pretext. Moreover, Warnell, like Graves, is African-American and over the age of 40, thus he is part of the same protected classes as Graves, but was still hired. Finally, as discussed earlier in this opinion, Graves was not perceived as disabled by JobWorks, and there is no evidence that any alleged perceived disability factored into JobWorks' decision not to rehire Graves.


## CONCLUSION

For the aforementioned reasons, the motion to strike [DE #36] is **DENIED**. The motion for summary judgment [DE #30] is **GRANTED**.

The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's complaint.  Furthermore, the Clerk is **ORDERED** to **CLOSE** this case.


DATED: September 1, 2009          /s/ RUDY LOZANO, Judge
                                        United States District Court